Filed 12/17/20  One Ford Road Homeowners Assn. v. Johnson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ONE FORD ROAD HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>              v.<br><br>STACIE JOHNSON et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G057674<br><br>(Super. Ct. No. 30-2017-00945540)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Reversed and remanded with directions.

Law Office of Philip A. Levy and Philip A. Levy for Defendants, Cross-complainants and Appellants.

Richardson | Ober | DeNichilo, Kelly G. Richardson and Daniel C. Heaton for Plaintiff, Cross-defendant and Respondent.

\*          \*          \*

# INTRODUCTION

Stacie Johnson and Lloyd Rucker live in a home within One Ford Road, a planned unit development in Newport Beach. They appeal from a judgment adjudging them to be in violation of One Ford Road's covenants, conditions, and restrictions (the CC&R's). The trial court, following a bench trial, found that Johnson and Rucker had breached the CC&R's by refusing to allow an onsite, post-completion inspection of improvements made to their home, and that plaintiff One Ford Road Homeowners Association (the Association) was entitled to keep a $5,000 construction deposit and a $500 fine paid by Johnson.

This appeal requires us to interpret and apply several sections of the CC&R's relating to procedures governing improvements and additions made to a home within One Ford Road. In particular, section 7.12(c)[1] and section 7.12(e) are central to this appeal and our decision. Section 7.12(c) states, in relevant part: "Within thirty (30) days of receipt of the notice of completion from an Owner, the Architectural Committee, or its duly authorized representative, shall have the right to enter into the subject Residence, as provided above, to inspect such Improvement." Section 7.12(e) states: "If for any reason the Architectural Committee fails to notify the Owner of any non-compliance within sixty (60) days after receipt of said notice of completion from the Owner, the Improvement shall be deemed to be in accordance with said approved plans and specifications."

We conclude that the Association timely provided notice of noncompliance pursuant to section 7.12(e), but the stated ground for noncompliance—that Johnson had refused to allow the inspection under section 7.12(c)—was not supported by the evidence and was therefore invalid. The trial court found that Johnson and Rucker had acted reasonably when they initially declined access to their home for an inspection, and there

---

[1] Section citations are to sections in the CC&R's unless otherwise indicated.

is no evidence they refused access thereafter. We also conclude that both Johnson and Rucker are proper parties to this lawsuit. Based on these conclusions, we reverse the judgment and remand with directions to enter judgment in favor of Johnson and Rucker.

## FACTS

Johnson purchased a home at 11 Jupiter Hills Drive in Newport Beach (11 Jupiter) in 2015. 11 Jupiter is within One Ford Road and is subject to the CC&R's, which were recorded in March 1998. Johnson and Rucker live together at 11 Jupiter.

In January 2016, the Association's Architectural Committee approved Johnson's application to make improvements to 11 Jupiter. Johnson paid a $5,000 construction deposit to the Association. On October 10, 2016, she sent a written notice of completion to the Association, which acknowledged receipt on October 11, 2016.

The Association hired a third party, Smith Architects, to conduct inspections of completed improvements to determine whether they conform to approved plans. Prior to engaging Smith Architects, the Association's Architectural Committee had conducted its own inspections of completed improvements.

Kristine Trenary of Smith Architects was assigned the task of inspecting the improvements to 11 Jupiter. After receiving the file, Trenary called Johnson to schedule a time to complete the inspection. Trenary left a couple of voicemail messages but did not receive a return call. On October 26, 2016, Trenary was out in the field and decided to try again to get in touch with Johnson. Johnson answered the telephone. Trenary repeated what she had said in her voicemail messages and asked to schedule an appointment for that day. Johnson agreed.

As Trenary was driving to 11 Jupiter, she received a call from Rucker. She told him who she was and explained her purpose for inspecting the home. He said the CC&R's did not authorize her to go onto the property and cancelled the appointment. Trenary described his tone of voice as "angry."

3

Later that day, Trenary sent an e-mail to Jeff Smith of Smith Architects to inform him of her attempts to conduct the inspection of 11 Jupiter. She wrote: "They have refused access to the home. Would not return calls at first. Then set appointment. Then cancelled it. They are stating that the CC&R's do not mention this procedure and that they sent pictures in [and] that should satisfy what the association is looking for. He is not very happy about this and asked repeatedly if we have done work in their community before. I said yes, and he wanted names and addresses. I told him I could not give him that as I don't remember specifics. He asked why we do this instead of his photos, explained the series we take and that it is [the] final step before HOA meeting and completion letters and deposits returned. He just kept saying it was not in the CC&R's. I told him that we, again, only take photos and we were asked to do this. Can not [*sic*] help in any other way but do what we were asked to do. Told him we would return file to the office and once it got figured out we would be happy to reschedule if need be."

Also on October 26, Johnson sent Renee Barger, the Association's property manager, an e-mail stating: "I received a phone call from Smith Architects that they were sub contracted to come out and take photos of my property at 11 Jupiter Hills. I told them there was no need to[] since I had already sent photos as requested with the notice of completion. Was there something wrong with my photos? I went through the design guidelines again and nothing states that the board has authorization to sub out the work. In addition, they were rude when I denied th[eir] visit and they stated I would not get my deposit back. Please explain so I understand."

Barger replied on November 1, 2016 by e-mail stating: "In regards to the NOC (Notice of Completion form), the Association has hired a 3rd party Architect by the name of Smith Architects to review all submittals including the confirmation of the completion of the work which is outlined in the CC&R's below. Unfortunately, photos will not suffice and the architect will need access [to] your home to confirm the

4

improvements were completed according to plan. Unfortunately, if the site inspection is not done, then the Association will not be able to refund the architectural deposit on file."

After October 26, 2016, Barger did not ask Smith Architects to contact Johnson to reschedule an inspection. Barger testified she did not know whether anybody from Smith Architects contacted Johnson after that date. Rucker testified that after October 26, nobody contacted him about scheduling an inspection and that he was not aware that Johnson had been contacted about an inspection

On November 14, 2016, Johnson sent Barger an e-mail stating: "Please provide the last 5 homes that were inspected by Smith Architects or outside party hired by the HOA within the last 12 months. I want to be treated fairly and have a right to know if this is standard conduct . . . . In addition 30 days has passed so per the CC&R's my project is deemed approved since no objection [was] ever made regarding the photo sen[t] to the board. Please mail the $5,000 deposit back in a timely manner."

Barger responded on November 17 with an e-mail stating: "As Smith Architects was recently hired by the HOA, your home was the 1st home which needed to submit an NOC to the firm directly. Historically, the Association's Architectural Committee would inspect and confirm if the improvements were completed in accordance with the Governing Documents. [¶] Although your plans were approved within the 60[-]day deadline, your NOC (Notice of Completion) form needs to be executed by the [Architectural Committee] before your architectural deposit is refunded to you."

A letter dated November 18, 2016 from Smith Architects to the Architectural Committee stated: "**11 Jupiter Hills—Stacie Johnson:** Review of On-Site Notice of Completion Application stamped Received 10-10-16. Several attempts were made by Smith Architects to gain access for an on-site Notice of Completion visit. The Homeowner is unwilling to provide access to allow the inspection. Management was notified of the Homeowner's refusal to allow access on 10-26-16. There appears to have

been no resolution of the issue as of this date. Recommend denial of the Applicant's NOC and initiation of the Association's procedures for compliance."

The November 18 letter from Smith Architects was forwarded to Johnson with a letter dated November 23, 2016 from the Association. The Association's letter stated: "Please review the enclosed regarding your recent Notice of Completion submittal. [¶] Should you have a deposit on file, and your Notice of Completion has been approved, your deposit will be returned to you within 45 days, subject to a review of your file for damages to common area[s] and/or current fines and assessments due, if applicable. If your Notice of Completion is denied, you must address the issues and resubmit new photos within 30 days."

In February 2017, the Association sent Johnson notice of a disciplinary hearing for her failure to allow an inspection of 11 Jupiter. The hearing was conducted and the Association imposed a $500 fine against Johnson. The Association withdrew $500 from her account balance in payment of the fine. In August 2017, Johnson conveyed 11 Jupiter to Rucker.

## PROCEDURAL HISTORY

### I. The Complaint and Cross-complaint

In September 2017, the Association filed a complaint against Johnson and Rucker for breach of the CC&R's and declaratory relief. The complaint alleged that Johnson and Rucker were in violation of the CC&R's for failing to allow the Association or its authorized agent access to 11 Jupiter to conduct a post-completion inspection and for failing to pay the $500 fine.

The complaint sought an injunction requiring Johnson and Rucker to allow the Association or its authorized agent to enter 11 Jupiter to complete the inspection and to require Johnson to pay the $500 fine. The complaint sought a declaration on these subjects: (1) The $500 fine was in compliance with CC&R's; (2) the Association's retention of the $5,000 construction deposit was in compliance with CC&R's; (3) the

6

Association's request to enter the property to complete the post-completion inspection was in compliance with CC&R's; and (4) the Association's denial of notice of completion of the construction improvements to 11 Jupiter was proper under the CC&R's as a result of the refusal of Johnson and Rucker to allow access to the property for the post-completion inspection.

Johnson and Rucker filed a cross-complaint for breach of the CC&R's, declaratory relief, and injunctive relief. The cross-complaint alleged the improvements to 11 Jupiter must be deemed to conform to the approved plans because the Association had failed to give written notice of denial of the notice of completion within 60 days of receiving it, and the Association had breached the CC&R's by maintaining that the improvements to 11 Jupiter had not been approved, refusing to return the $5,000 construction deposit, and imposing the $500 fine. The cross-complaint sought an injunction requiring the Association to return the construction deposition.

## II. Trial and Decision

After a bench trial on the complaint and the cross-complaint, the trial court ruled in favor of the Association. In a minute order, the court recited the reasons for its ruling and answered the questions presented by the parties' joint list of controverted issues.

The key to the trial court's decision was an interpretation of section 7.12(c) as requiring only that the Association invoke its right to inspect the property within 30 days of the notice of completion. The court concluded the Association was not required to complete the inspection within 30 days lest an owner, by refusing access, be able to frustrate the Association's ability to determine compliance within 60 days, as required by section 7.12(e).

The trial court found that the Association had invoked its right to inspect the property within 30 days of receipt of the notice of completion. Although the court found that Johnson and Rucker had not acted unreasonably regarding Smith Architects'

7

attempts to inspect 11 Jupiter, the court found that Johnson and Rucker had breached the CC&R's by refusing to allow the inspection "since to date, the inspection has not occurred." The court found that the Association had provided Johnson and Rucker notice of noncompliance within the 60-day time frame for providing such notice, the notice of completion had not been deemed approved, "[t]he project is still pending," and the Association did not have to return the $5,000 construction deposit or the $500 fine. No party requested a statement of decision.

A judgment in favor of the Association and against Johnson and Rucker was entered. The judgment incorporated the court's answers to questions presented by the parties' joint list of controverted issues.

## DISCUSSION

### I. Both Johnson and Rucker Are Proper Parties

Johnson and Rucker contend neither of them is a proper party to this litigation. Johnson is not a proper party, they argue, because she conveyed 11 Jupiter to Rucker in August 2017 and therefore is no longer bound by the CC&R's. Rucker is not a proper party, they argue, because he was not an owner of 11 Jupiter when the CC&R's were claimed to have been breached. This argument is dubious on its face, for it means that a simple conveyance can leave nobody responsible for violations of the CC&R's. We conclude both Johnson and Rucker are proper parties.

Covenants, conditions, and restrictions appearing in a declaration of a common interest development are enforceable equitable servitudes. They "bind all owners of separate interests in the development" and "[u]nless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (Civ. Code, § 6856, subd. (a).) Inclusion of covenants, conditions, and restrictions in a recorded declaration of a common interest development imparts sufficient notice to permit their enforcement as equitable servitudes. (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 379.)

8

"Under the law of equitable servitudes, courts may enforce a promise about the use of land even though the person who made the promise has transferred the land to another. [Citation.] The underlying idea is that a landowner's promise to refrain from particular conduct pertaining to land creates in the beneficiary of that promise 'an equitable interest in the land of the promisor.'" (*Nahrstedt v. Lakeside Village Condominium Assn., supra*, 8 Cal.4th at p. 379.)

Thus, the beneficiary of the promise, here the Association, has an equitable interest in the land of the promisor, 11 Jupiter, to enforce the promise, and that equitable interest continued in existence after Johnson conveyed 11 Jupiter to Rucker. Just as Rucker, upon conveyance to him of 11 Jupiter, had the right to enforce the CC&R's, the Association had the right to enforce the CC&R's against him. Whether or not Rucker engaged in the conduct constituting the violations of the CC&R's is not the pertinent issue for determining whether he is a proper party. When 11 Jupiter was conveyed to Rucker, it had improvements which, according to the Association, were in violation of the CC&R's. The improvements continued, allegedly, to be in violation of the CC&R's after the conveyance to Rucker. The Association had the right to hold him responsible because he owned the property on which those improvements had been constructed.

Johnson is also a proper party by virtue of the $500 fine and the construction deposit. There was, and continues to be, a dispute between Johnson and the Association over imposition of the $500 fine and retention of the $5,000 construction deposit: Johnson claims she is entitled to get those back; the Association claims it is entitled keep them. Johnson was therefore a proper party to the Association's declaratory relief causes of action, which sought declarations that the fine and construction deposit were in compliance with the CC&R's.

## II. Principles of Interpretation and Standard of Review

Covenants, conditions, and restrictions are interpreted in accordance with the rules of contract interpretation. (*Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626,

9

635; *Bear Creek Master Assn. v. Southern California Investors, Inc.* (2018) 28 Cal.App.5th 809, 818.)  "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  [Citations.]  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Founding Members*).)  A court has a "duty to interpret a declaration of covenants, conditions and restrictions in a way that is both reasonable and carries out the intended purpose of the contract."  (*Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 259.)

The words of a contract are given their ordinary and popular meaning, and the circumstances under which the contract was made are considered.  (*Founding Members, supra*, 109 Cal.App.4th at p. 955; *Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197-1198.)  "To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless."  (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.)

We independently review the trial court's interpretation of the CC&R's because no extrinsic evidence of their meaning was presented at trial.  (*Bear Creek, supra*, 28 Cal.App.5th at p. 819; see *Founding Members, supra*, 109 Cal.App.4th at p. 955.)

### III.  Relevant Provisions of the CC&R's

Article VII of the CC&R's, entitled "Architectural Committee and Architectural Control," sets forth the rules and procedures governing improvements and additions to a home that is within One Ford Road.  A homeowner must obtain the prior written approval of the Architectural Committee before commencing any structural, architectural, landscaping, or hardscaping improvement or any additions to the

homeowner's property.  (§§ 7.1, 7.2.)  Johnson complied with this requirement and obtained prior approval from the Architectural Committee of her plans.

Section 7.12(a) grants the Architectural Committee or "its duly authorized representative" the right to enter a residence during the course of construction in order to "inspect[] such construction and/or installation."  Section 7.12(a) also states:  "The Architectural Committee may not enter into a Residence without obtaining the prior permission of the owner or occupant of such Residence; provided, however, that such prior permission shall not be unreasonably withheld by an Owner and shall be given for entry by the Architectural Committee during the daylight hours within forty-eight (48) hours of the request for entry."

Section 7.12(b) requires the homeowner, upon completion of the construction, to present a written notice of completion to the Architectural Committee.  Johnson complied with this requirement.

Section 7.12(c) authorizes the Architectural Committee or its authorized representative to enter the residence to inspect the completed improvement and determine whether it complies with the approved plans.  Section 7.12(c) states:  "Within thirty (30) days of receipt of the notice of completion from an Owner, the Architectural Committee, or its duly authorized representative, shall have the right to enter into the subject Residence, as provided above, to inspect such Improvement to determine whether it was constructed, reconstructed, altered or refinished to substantial compliance with the approved plans and specifications."

Once the inspection is completed, the Architectural Committee must notify the homeowner of any noncompliance within 15 days of the actual inspection:  "If the Architectural Committee finds that such construction, reconstruction, alteration or refinishing was not done in substantial compliance with the approved plans and specifications, it shall notify the Owner in writing of such non-compliance within fifteen

11

(15) days of actual inspection of the Residence, specifying particulars of non-compliance, and shall require the Owner to remedy such non-compliance."  (§ 7.12(c).)

The homeowner has 30 days from the date of notification of noncompliance to remedy such noncompliance.  (§ 7.12(d).)  "If, upon the expiration of thirty (30) days from the date of notification of non-compliance, the Owner shall have failed to remedy such non-compliance, the Architectural Committee shall notify the Owner in writing of such failure."  (*Ibid*.)

Section 7.12(e) states:  "If for any reason the Architectural Committee fails to notify the Owner of any non-compliance within sixty (60) days after receipt of said notice of completion from the Owner, the Improvement shall be deemed to be in accordance with said approved plans and specifications."

### IV.  The Association Gave Timely Notice of Noncompliance

The trial court found that the November 23, 2016 letter from the Association, which forwarded the November 18 letter from Smith Architects, constituted a notice of noncompliance that was sent within the 60-day period of section 7.12(e). Johnson and Rucker argue the November 23 letter did not constitute a notice of noncompliance because it did not express a decision by the Architectural Committee. Instead, they argue, the November 23 letter identified two possible outcomes:  (1) If the notice of completion is approved, then the construction deposit will be returned or (2) if the notice of completion is not approved, then the homeowner must address the issues of noncompliance.

The more reasonable construction of the November 23 letter is that it was a notice of noncompliance pursuant to section 7.12(e).  Although the November 23 letter did not expressly approve or deny the notice of completion, the Association did not yet have to make that decision:  Under section 7.12(e), the Architectural Committee need only notify the homeowner of any noncompliance within 60 days of receipt of the notice

12

of completion. The November 23 letter encloses and refers to the November 18 letter from Smith Architects, which concluded that Johnson was in noncompliance by having refused access to 11 Jupiter for the inspection.[2] Given the nature and number of communications back and forth between Johnson or Rucker and representatives of the Association, there could be no reasonable doubt about what the Association was claiming. The November 23 letter imparted adequate notice that the Association was asserting noncompliance based on failure to allow access for the inspection as stated in the letter from Smith Architects.

## V. The Notice of Noncompliance Was Based on an Invalid Ground

Although the November 23 letter was a timely notice of noncompliance, we conclude the letter did not identify a valid ground because the evidence did not support a finding that Johnson and Rucker refused access to 11 Jupiter for the inspection.

Johnson and Rucker argue they cannot be held in noncompliance because an inspection of 11 Jupiter was not conducted within 30 days of October 11, 2016, the date on which the Association received the notice of completion. They contend section 7.12(c) grants the Architectural Committee the right to go into the residence for only 30 days after receipt of the notice of completion: Once the 30-day period is over, the Architectural Committee has no right to enter the residence. The Association contends, and the trial court found, that section 7.12(c) means that within the 30-day period, the Architectural Committee need only give notice of its intent to go into the residence to

---

[2] Johnson and Rucker argue the term "any non-compliance" in section 7.12(e) can mean only noncompliance with approved plans for improvements and does not refer to noncompliance in permitting access to the residence for inspection. We decline to read "any non-compliance" so narrowly. If a homeowner unreasonably withholds access to the residence or otherwise fails to act in good faith in allowing an inspection, then the Association should be able to cite that as noncompliance requiring correction before the notice of completion is approved.

inspect the improvements: the actual inspection need not be conducted within the 30-day period.

The relevant language of section 7.12(c) is: "*Within thirty (30) days of receipt* of the notice of completion from an Owner, the Architectural Committee, or its duly authorized representative, *shall have the right to enter into the subject Residence*, as provided above, to inspect such Improvement." (Italics added.) This language is unambiguous: It gives the Association or its representative the right to enter into the residence to conduct the inspection for a period of 30 days following receipt of the notice of completion. Once the 30-day period ends, the Association no longer has the right to enter the residence. The 30-day time period is tied directly to the right to *enter into* the residence, not a right to *invoke* the right to enter the residence. Indeed, section 7.12(c) says nothing about invoking the right to enter the residence to conduct an inspection. If the drafters of the CC&R's had intended for section 7.12(c) to place a 30-day limit only on the Architectural Committee's ability to invoke its right to inspect the property, they could and would have said so.

The Association argues, and the trial court concluded, that if the inspection must occur within 30 days of receipt of the notice of completion, then the homeowner would be able to frustrate the Association's efforts to determine compliance within the 60-day period of section 7.12(e) by refusing to allow access for the inspection. But Johnson and Rucker are subject, as are all homeowners in One Ford Road, to both an express covenant and an implied covenant of good faith and fair dealing imposing an obligation on them to act reasonably and cooperate with the inspection. Section 7.12(c) states the Architectural Committee has the right to enter the residence "as provided above" to inspect the improvements. Above section 7.12(c) is section 7.12(a), which provides that the owner or occupant of the residence may not "unreasonably" withhold permission for the Architectural Committee to enter into a Residence to inspect ongoing construction. The owner or occupant of a residence therefore cannot unreasonably

14

withhold permission for the Architectural Committee or its authorized representative to enter a residence for an inspection of completed improvements.

In addition, implied in section 7.12 is a covenant that the homeowner will not do anything to injure the right of the Association or its authorized representative to enter the residence to conduct the inspection under section 7.12(c). Declarations of covenants, conditions, and restrictions operate as a contract between the homeowners association and the homeowner. (*Treo @ Kettner Homeowners Assn. v. Superior Court* (2008) 166 Cal.App.4th 1055, 1066.) Every contract has an implied covenant of good faith and fair dealing providing that "'neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400.)

Unreasonable refusal or lack of cooperation by the homeowner in permitting an inspection would place the homeowner in breach of express and implied provisions of the CC&R's. Given the short time frames of section 7.12, such a breach likely would be deemed material and excuse the Association from further performance. (*De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 863; *Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 142.)

Johnson and Rucker had an obligation, therefore, to act reasonably and cooperate with the Association in allowing the Architectural Committee or its representative to enter 11 Jupiter to inspect the completed improvements. On that subject, the trial court made a crucial finding. One of the issues presented in the parties' joint statement of controverted issues was "[w]hether Defendants acted unreasonably regarding Smith Architect's attempt to inspect Defendants' property." The court answered "No"—meaning Johnson and Rucker acted reasonably.

The court also made an oral finding that Johnson and Rucker acted reasonably in requiring confirmation that Smith Architects was the Association's duly authorized representative before allowing Smith Architects to conduct the inspection.

15

That confirmation did not arrive until November 1, 2016. On October 26, Johnson sent Barger an e-mail asking for an explanation as to why she had been contacted by Smith Architects. Barger testified that Johnson was reasonable in doing so because, in the past, the Architectural Committee had conducted the inspections, and this was the first time Smith Architects had conducted an inspection for One Ford Road. By e-mail dated November 1, 2016, Barger provided Johnson confirmation that Smith Architects had been hired by the Association to conduct post-completion inspections and was the Association's duly authorized representative.

The trial court thus in effect found that Johnson and Rucker had acted reasonably through November 1, 2016, the date on which they received confirmation that Smith Architects was the Association's duly authorized representative. The Association had through November 10, 2016 (30 days after October 11) to enter 11 Jupiter to conduct the inspection.

There is no evidence in the record to show that from November 1 through November 10 Johnson or Rucker ever denied access to 11 Jupiter. Nobody from Smith Architects or the Association contacted Johnson or Rucker within that time frame to schedule an inspection. Trenary testified that on October 26 she returned the file to Smith Architects with an e-mail stating she had been denied access to 11 Jupiter. She had no further interaction with Johnson or Rucker. Barger testified that after October 26, 2016, she did not contact Johnson to schedule an inspection, did not ask Smith Architects to contact Johnson to reschedule an inspection, and did not know whether anybody from Smith Architects had contacted Johnson. Smith testified that when he received the file for 11 Jupiter back from Trenary, he sent the file to Barger with a note suggesting she contact the homeowner—which Barger did not do. Smith did not contact Johnson but waited to hear back from Barger. Rucker testified that after October 26, nobody contacted him about scheduling an inspection, and he was not aware that Johnson had ever been contacted.

16

The Association deemed Johnson to be in noncompliance on the ground she was "unwilling to provide access to allow the inspection" and she had "refus[ed] to allow access on 10-26-16." But from October 11 through November 1 she and Rucker were found to have acted reasonably and after October 26 they were never contacted about scheduling an inspection. Johnson and Rucker could not have refused access to 11 Jupiter if nobody from the Association or Smith Architects ever requested access.

The Association argues that Johnson had the burden to contact Smith Architects to schedule the inspection. We disagree for three reasons. First, section 7.12(a) states that the Association's Architectural Committee may not enter into a residence "without obtaining the prior permission of the owner or occupant." In order to obtain permission, the Association or its authorized representative must first ask for it. The initial appointment made by Trenary was not a standing request for entry to 11 Jupiter but a request to make an appointment for a specific date and time. Rucker and Johnson cancelled that appointment, and the trial court found that they had acted reasonably in doing so.

Second, under section 7.12(c), the adverse consequence (loss of right to enter the residence) for failing to inspect within 30 days falls on the Association, not the homeowner; it therefore behooves the Association to contact the homeowner to schedule the inspection. In other words, the burden falls on the Association to contact the homeowner to schedule the inspection because the Association will lose a valuable right if the inspection is not conducted within the 30-day time frame.

Finally, Johnson was faulted for being *unwilling* or *refusing* to provide access. She cannot be held to be unwilling to provide access merely because she did not contact the Association or Smith Architects to schedule an inspection. Johnson's unwillingness to provide access was, according to the November 18 letter from Smith Architects, based on her "refusal" to allow access on October 26, and not at any other time. But, as we have emphasized, the trial court found that Johnson and Rucker had

17

acted reasonably in refusing access on that date.  That single "refusal" to allow access was the only basis for the notice of noncompliance.

A homeowners association suing a homeowner to enforce its CC&R's bears the burden of demonstrating that "it followed its own standards and procedures" and that "its procedures were fair and reasonable, its substantive decision was made in good faith and was reasonable, and its action was not arbitrary or capricious."  (*Friars Village Homeowners Assn. v. Hansing* (2013) 220 Cal.App.4th 405, 413.)  The Association's notice of noncompliance was not reasonable because, as we have explained in detail, Johnson and Rucker did not "refuse" access to 11 Jupiter for inspection within the meaning of the CC&R's.  Under section 7.12(e), the improvements to 11 Jupiter must be deemed to be in conformance with the approved plans and specifications because within 60 days of receipt of the notice of completion the Association failed to notify Johnson of noncompliance based on a valid ground.  For the same reasons, the disciplinary action against Johnson was invalid, and the Association must refund the construction deposit.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to enter judgment in favor of Appellants.  Appellants to recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

18